In the Matter of the Appeal in Joint County Ditch
No. 1108-2, Henry-Fulton County, Ohio,
Petitioned for by Clay Davis, et al.

170

(No. 353—Decided May 24, 1952.)

*Mr. James Williamson* and *Messrs. Newcomer, Newcomer & Shaffer,* for appellants.

*Mr. George A. Meekison, Mr. David Meekison, Mr. Otto W. Hess* and *Mr. Marlow Witt,* for appellees.

GUERNSEY, J. This cause is submitted to this court

on the motion of Clay Davis, John M. Gramling and Edwin Gearig, appellees herein, to dismiss the appeal taken in this action from the judgment and decree of the Court of Common Pleas.

In their motion, the movants rely upon the following stated reasons for dismissing the appeal, to wit:

1. That the time and method for perfecting the appeal is governed by Sections 6477 and 6468, General Code, and not by Section 12223-3, General Code, and related sections.

2. That the Board of County Commissioners of Fulton county does not have legal capacity to appeal, and in the event the appeal is dismissed as to said board of county commissioners, the appeal will not survive as to Carl Mohr for the reason that he has neither given bond nor signed any notice of appeal nor has any notice of appeal been signed in his behalf.

The notice of appeal prescribes that the appeal is on questions of law and is given by the Board of County Commissioners of Fulton County, Ohio, on behalf of such county and also on behalf of the owners of land in such county who are to be assessed for the construction of said improvement, and by Carl Mohr, for himself and others, and is signed as follows:

"The Board of County Commissioners of Fulton County, Ohio, et al., appellants.

By (s) Davis B. Johnson,
     prosecuting attorney for Fulton county, Ohio, and
   (s) C. L. Newcomer & Davis B. Johnson,
     their Attorneys."

Said C. L. Newcomer appears as counsel of record for Carl Mohr.

From the record it appears that the journal entry of the judgment from which the appeal is taken was made on July 9, 1951; that a motion for new trial was filed on July 11, 1951, which was overruled by journal

entry of August 8, 1951; and that the notice of appeal was filed herein on August 13, 1951. Thus a period of 35 days elapsed between the date of the final order from which this appeal is taken and the date of the giving of the notice of appeal, and a period of five days elapsed between the date of the journal entry overruling the motion for a new trial and the date of the giving of the notice of appeal.

The pertinent provisions of Sections 6477 and 6468, General Code, which the appellees contend govern the appeal, are as follows:

Section 6477. ''The time for filing bills of exceptions and for perfecting appeals shall begin to run from the time of the entering of any final judgment, order, or decree against any of the appellants upon any of the issues that may be brought to the Court of Common Pleas on appeal * * *''

Section 6468. ''To perfect an appeal as provided in this chapter [G. C. Secs. 6442 to 6508], the owner of land, within twenty-one days from the date of the order appealed from shall file with the auditor an appeal bond * * *. The owner shall also file with such bond a statement of the decision or order appealed from and of the claims of the owner in ordinary and concise language. * * *''

The pertinent statutory provisions which the appellants contend govern the appeal are incorporated in the following sections of the General Code, to wit:

Section 12223-3. ''Every final order, judgment or decree of a court * * * may be reviewed as hereinafter provided, unless otherwise provided by law * * *.''

Section 12223-7. ''[Time for perfecting appeal.] After the journal entry of the final order, judgment or decree, has been approved by the court in writing and filed with the clerk for journalization, or after the entry of other matter for review, the period of time

within which the appeal shall be perfected, unless otherwise provided by law, is as follows:

"1. In appeals to the Supreme Court, to Courts of Appeals or from Municipal Courts and from Probate Courts to Courts of Common Pleas, within twenty (20) days.

"Provided, that, when a motion for a new trial is filed by either party within ten days after a journal entry of a final order, judgment or decree has been approved by the court in writing and filed with the clerk for journalization, then the time of perfecting the appeal shall not begin to run until the entry of the order overruling or sustaining the motion for new trial. * * *"

A careful reading of Chapters 1 and 2 of Title III of the General Code, of Chapter 1 of which Sections 6477 and 6468 are a part, clearly discloses that the provisions of Section 6468 apply exclusively to appeals to the Common Pleas Court from the final order entered upon the journal of the board of county commissioners, and do not in any way apply to appeals to the Court of Appeals, taken from final orders made by the Common Pleas Court upon appeal from final orders made by the board of county commissioners, and that the provisions of Section 6477, General Code, apply exclusively to appeals to the Court of Appeals from the final orders made by Common Pleas Courts.

Section 6477, above mentioned, is *in pari materia* with Section 12223-7, General Code, and such sections must, therefore, be read and construed together.

Thus read and construed, it is clear that the provisions of Section 12223-7, General Code, providing for the extension of time for filing notice of appeal in cases where motions for new trials are filed, apply to appeals from the final orders prescribed in Section 6477, General Code.

In the instant case the notice of appeal was given within five days of the date of the journal entry overruling the motion for a new trial and within the period prescribed by statute. The notice of appeal prescribed an appeal upon questions of law only and no bond was required to be given to perfect the appeal to the Court of Appeals from the Common Pleas Court.

The form of the notice of appeal was such as to constitute Carl Mohr one of the appellants.

As Carl Mohr was fully qualified as an appellant, the appeal would stand irrespective of the legal capacity of the Board of County Commissioners of Fulton County as appellant.

However, the Board of County Commissioners of Fulton County acted in an administrative rather than a judicial capacity in the proceedings had before the joint board of county commissioners and by reason thereof are not precluded from becoming appellants from the judgment of the Common Pleas Court. Furthermore, they are, for the purposes of this appeal, owners of land within said county affected by said proceedings, and fully qualified as appellants in this cause and have properly effected their appeal herein.

For the reasons mentioned, the motion of the appellees to dismiss the appeal will be overruled, at their costs.

*Motion overruled.*

MIDDLETON, P. J., and AHL, J., concur.

(Decided May 24, 1952.)

ON APPEAL.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Henry County, made in a joint county ditch proceeding ap-

pealed to that court from a final order made by the Joint Board of County Commissioners of Henry and Fulton Counties, dismissing the petition of Clay Davis and others for the deepening, widening and straightening of a part of Bad creek and two lateral open ditches located in Fulton and Henry counties.

In its final order, the Common Pleas Court found:

1. That the construction of the improvement is necessary.

2. That it will be conducive to the public welfare.

3. That the cost of the construction of the improvement is less than the benefits to be derived by the construction of the improvement.

4. That the route, termini and mode of construction are the best to accomplish the purposes of the improvement.

5. That the assessments, as amended and filed with the joint board of county commissioners on the 2nd day of May 1949, were levied according to the benefits.

The court, among other things, further adjudged and decreed that the Joint Board of County Commissioners of Henry and Fulton Counties should proceed with the improvement.

This is the final order from which this appeal is taken by the Board of County Commissioners of Fulton County, and Carl Mohr.

The appellants, Board of County Commissioners of Fulton County and Carl Mohr, assign error in the following particulars:

1. No petition and no bond were filed in this ditch proceeding as provided by law.

2. The Court of Common Pleas erred in admitting evidence offered by the petitioners for the ditch, and in refusing to admit evidence offered by those opposed to the granting of the petition for the ditch.

3. The Court of Common Pleas erred in finding that the construction of the improvement is necessary and

will be conducive to the public welfare; that the cost of the construction of the proposed improvement is less than the benefit to be derived by the construction of the improvement; that the route, termini and mode of construction are the best to accomplish the purposes of the improvement; in approving the maps, profiles, schedules and reports as prepared by the deputy county engineer of Henry county, Ohio, for the construction of said improvement; in finding that the assessments as amended and filed with the joint board of county commissioners on May 2, 1949, were levied according to the benefits, and in approving and confirming the assessments; in approving and levying the assessments on the owners of land without a hearing on the matter of assessments and without giving any notice to the owners of land of the amount of the proposed assessments and of the time and place of hearing; in ordering the joint board of county commissioners to proceed with said improvement according to the maps, profiles, schedules and reports as prepared by the county engineer of Henry county, Ohio; in ordering the letting of a contract for the construction of said improvement; in ordering the levying and collection of the assessments as reported in the schedules of the engineer; in ordering the auditor of Henry county, Ohio, to place the assessments as stated in the schedule on land in Henry county, Ohio; and in ordering the auditor of Henry county, Ohio, to certify to the auditor of Fulton county, Ohio, a schedule of the assessments levied on the land in Fulton county, Ohio.

4. The assessments as set forth in the schedule of assessments and approved by the court, are not made according to benefits and are contrary to law. Said assessments are attempted to be levied in zones without reference to whether the proposed improvement will accelerate the drainage of the land in the

zones as designated by the engineer. The proposed improvement, if constructed, will not accelerate the flow of water from any land in Fulton county that lies one mile north of the Henry county line, and will not accelerate the flow of the water at the lower part of the proposed improvement, and will not benefit said land.

5. The Court of Common Pleas erred in overruling the motion for a new trial for each of the reasons stated in said motion.

These assignments of error will be considered in the order mentioned.

1. An inspection of the record discloses that a petition for the ditch improvement in conformity to all statutory requirements was duly filed herein. The record discloses also that the petitioners filed with their petition a bond in proper form in the sum of $600. Under the provisions of Section 6446, General Code, this bond is sufficient for a ditch improvement eight miles in length. While the creek improvement with the laterals, on actual measurement, exceeded eight miles, the governing statute required only that the bond be in an amount sufficient to cover the mileage "as estimated by the petitioner." The good faith of the petitioner in estimating the mileage is not questioned, and the bond as given constitutes a substantial compliance with the statutory requirements, so that this first assignment of error is without merit.

2. The second assignment of error is neither specified nor argued in the appellants' brief and for this reason the court, under its statutory prerogative, will not consider it.

3. The Supreme Court of Ohio, in the case of *Blue* v. *Wentz,* 54 Ohio St., 247, 43 N. E., 493, and in the case of *Mason* v. *Commrs. of Fulton County,* 80 Ohio St., 151, 88 N. E., 401, 131 Am. St. Rep., 689, 24 L. R. A. (N. S.), 903, laid down the following rules of law ap-

plicable to drainage into natural watercourses such as Bad creek, the natural watercourse involved in this proceeding, to wit:

"1. Where the lands of an owner, by reason of their situation, are provided with sufficient natural drainage, they are not liable for the costs and expense of a ditch necessary for the drainage of other lands, simply for the reason that the surface water of his lands naturally drain therefrom to and upon the lands requiring artificial drainage.

"2. A lower tenement is under a natural servitude to a higher one to receive from it all the surface water, accumulating from falling rains and melting snows, or from natural springs, that naturally flow from it to and upon the lower one. This advantage of the higher tenement is a part of the property of the owner in it, and he is not indebted to the lower tenement therefor.

"3. In making an assessment on lands, benefited by artificial drainage, the extent of their water shed is not the proper rule, but the amount of surface water for which artificial drainage is required to make them cultivable, and the benefits that will accrue to the lands from such drainage. However much water may fall on them or arise from natural springs, if, by reason of their situation, they have adequate natural drainage therefor, they are not liable for the cost of artificial drainage to other lands." *Blue* v. *Wentz, supra.*

The rules of law above mentioned are based upon the fact, in evidence in the *Blue case,* that the industry of man had not created the servitude (pages 254 and 255, case above cited). In other words, the servitude of the lower tenements to carry waters from the higher lands had been created by nature and had not been changed or added to by the industry of man.

"A landowner may, in the reasonable use of his land, drain the surface water from it into its natural

outlet, a watercourse, upon his own land, and thus increase the volume and accelerate the flow of water without incurring liability for damages to owners of lower lands; and his land is not subject to assessment for the cost of a ditch, or an improvement, that will not benefit its drainage but is constructed to prevent overflow from the watercourse or to benefit the drainage of servient lands." *Mason* v. *Commrs. of Fulton County, supra.*

The decision in the last above cited case is expressly predicated upon the decision in the first above cited case and the form of the statute then in effect (Section 4448, Revised Statutes), relating to assessments for ditch improvements. Said statute, then in effect, had been amended in April 1900 by adding thereto, the following:

"The words 'according to the benefits' used in this chapter in directing boards of county commissioners to assess lands for ditches and in directing engineers to report assessments for the same shall not be held to authorize any assessments for benefits conferred upon lands by nature nor the right of easement of the owners of superincumbent lands to pass the water therefrom through natural watercourses."

The statute now in effect relating to assessments for ditch improvements of the character involved in this case is Section 6455, General Code, reading as follows:

Section 6455. "[Assessments according to benefits.] The surveyor, in making his estimate of the amount to be assessed each tract of land, and the commissioners, in amending, correcting, confirming, and approving the assessments, shall levy the assessments according to benefits; and all land affected by said improvement shall be assessed in proportion as it is specially benefited by the improvement, and not otherwise."

It will be noted that the statutory provision upon

which the decision in the case of *Mason* v. *Commrs. of Fulton County, supra,* is partly predicated, is no longer a part of the statute relating to assessments for ditch improvements.

Consequently, the rules of law laid down in the case of *Mason* v. *Commrs. of Fulton County, supra,* are effective only to the extent they are not based upon the statutory provisions mentioned.

The evidence in the instant case shows that the uplands assessed for this ditch improvement are cleared of their timber and are under cultivation in such a manner that large quantities of silt are drained from them into the natural watercourse and that such silt is carried down stream toward the mouth thereof and deposited along the lower part thereof so as to interrupt the free and natural flow of water in said natural watercourse and at times, to cause the lands adjacent to and in the vicinity of the lower part thereof to become flooded to such an extent as to interfere with or prevent the growing of crops thereon. The evidence shows further that the sewage from many toilets located on the higher lands along the natural watercourse is drained into the watercourse and thereby carried and deposited on and along the lower part of said stream, constituting a nuisance therein and thereon.

The state of facts in the instant case, therefore, differs from the state of facts in the two cases above mentioned in that the instant case involves the drainage of silt and sewage from lands having the status of dominant tenements, such lands not being in their natural state by reason of the manner in which they are cultivated and the draining of sewage from said lands not being incident to the natural drainage of said lands, upon lands having the status of servient tenements whereby such silt and sewage is deposited in

that part of the natural watercourse flowing through the servient tenements.

The cases mentioned involve only the acceleration of the flow of waters through the construction of ditches and drains from lands having the status of dominant tenements, said lands being in approximately their natural state and said drainage not including the drainage of sewage, into a natural watercourse flowing through lands having the status of servient tenements.

For this reason, the rules of law laid down in the two cases above mentioned are not applicable to the ditch improvement contemplated in the instant case.

In the instant case the dominant tenement lands will be specially benefited by the improvement through the removal of silt and sewage from the natural watercourse deposited therein from said lands and by restoring said stream to its natural condition, and by the elimination of a condition constituting a hazard to the health of the occupants of the dominant tenement lands as well as to the occupants of the servient tenement lands.

As shown by the record, the construction of the improvement is necessary and will be conducive to the public welfare; the costs thereof will be less than the benefits; the route, termini, and the mode of construction are the best to accomplish the purpose of the improvement; and the assessments are levied according to the benefits.

It is shown also by the record that the Court of Common Pleas did not err in approving the maps, profiles, schedules and reports as prepared by the county engineer of Henry county, or in approving and confirming the assessments; nor did it err in ordering the joint board of county commissioners to proceed with the improvement and to let the contract for its

construction, or in ordering the auditor of Henry county to place the assessments, as stated in the schedules, on land in Henry county and to certify to the auditor of Fulton county a schedule of the assessments levied on the land in Fulton county.

Section 6472, General Code, prescribes, in part, as follows:

"The Court of Common Pleas, on appeal, shall hear the matters appealed to, *de novo*; the proceedings shall be had under the rules of law and procedure for civil cases. * * *"

Section 6467, General Code, reads as follows:

"Section 6467 [Appeal from final order]. Any owner interested may appeal to the Court of Common Pleas from a final order made by the commissioners, as provided in this chapter [G. C. Secs. 6442 to 6508], and may appeal any one or more of the following questions:

"(1) Is the improvement necessary?

"(2) Will the improvement be conducive to the public welfare?

"(3) Is the cost of the improvement greater than the benefits conferred?

"(4) Is the route, termini, or the mode of construction the best to accomplish the purpose of the improvement?

"(5) Are the assessments levied according to benefits?

"(6) Is the award for compensation or damages just?

"Such appeal may be taken from any order affecting any part of the improvement, as well as from any order affecting the entire improvement."

The appellants contend that under these sections the Common Pleas Court is required to conduct its proceedings on appeal in the same manner as the statutes prescribe that the joint board of county commissioners

shall conduct their proceedings on the petition for the ditch improvement filed with them.

It will be noted that under the provisions of Section 6472, General Code, the proceedings in the Court of Common Pleas, on appeal "shall be had under the rules of law and procedure for civil cases," and that Section 6467, General Code, prescribes the questions upon which an appeal may be taken.

Under the sections mentioned, the questions upon which an appeal may be taken are the issues upon which the appeal is tried in the Common Pleas Court. The appeal is tried *de novo* by the Common Pleas Court when the evidence on the questions mentioned is submitted to and heard by the court in the same manner as in other civil cases.

The provision of Section 6472, General Code, that "the Court of Common Pleas, on appeal, shall hear the matters appealed to, *de novo*," simply means that the Common Pleas Court shall hear the evidence upon the questions upon which the case is appealed in the same manner that courts hear the evidence in civil cases and render its decision on the evidence adduced.

The above sections, neither considered separately nor together, require the court to proceed in the same manner as the joint board of county commissioners is required to proceed on a ditch improvement proceeding.

The procedure had by the Common Pleas Court in the instant case was in full accord with the legal requirements. The Common Pleas Court, therefore, did not err, as contended by appellants "in approving and levying the assessments on the owners of land without a hearing on the matter of assessments and without giving any notice to the owners of land, of the amount of the proposed assessments and of the time and place of hearing."

For the reasons mentioned, the third assignment of error is without merit.

4. The assessments, as shown in our discussion of assignment of error No. 3, are according to the benefits. Assessments are not required to be based on the acceleration of the flow of water, but upon the special benefits to the lands assessed. This assignment of error is therefore without merit.

5. This assignment of error is not specified or argued in appellants' brief and for this reason the court, in the exercise of its statutory prerogative, will not consider it.

In their oral argument of this appeal, appellants contended that the trial court erred in not fixing the route and termini of the proposed improvement, but such claimed error is not specified in the motion for a new trial filed in the Common Pleas Court or in appellants' assignments of error and is not argued in appellants' brief. Section 12223-21 of the General Code, among other things, prescribes that "errors not argued by brief may be disregarded * * *." The court in the exercise of its prerogative conferred by said statutory provision will not consider such error. However, an inspection of the record in the case discloses that the Common Pleas Court in its judgment specifically approved the route and termini of the improvement and also specifically approved "the maps, profiles, schedules and reports as prepared by the county engineer of Henry county, Ohio, for the construction of said improvement," that such maps, profiles, schedules and reports were received in evidence and are exhibits in the record of the cause, and that the route and termini of the proposed improvement are fully set forth therein.

Finding no error in any of the particulars specified and argued in appellants' brief, the judgment of the

Common Pleas Court is affirmed at the costs of appellants, and the cause is remanded for execution.

*Judgment affirmed.*

AHL, J., concurs.

MIDDLETON, P. J., dissenting. I dissent from the opinion of the majority of this court.

In my opinion, the Common Pleas Court erred in finding that the assessments, as amended and filed with the joint board of county commissioners, were levied according to benefits, and in approving and confirming the assessments.

It is conceded that Bad creek, at the place of origin, is about 800 feet above sea level, and its terminal at the Maumee river is about 639 feet above sea level. There is therefore a fall of about 161 feet, and most of this fall is in Fulton county where the runoff of water is very swift. This land is assessed for the improvement.

The evidence shows that practically all land assessed for this proposed improvement lying north of a line one and one-half miles north of the Henry county line now has sufficient drainage, and that the proposed improvement will not accelerate the flow or cause the water to get away any faster from this land in Fulton county than it now gets away. The drainage of this high land will not be increased by this improvement nor the land benefited in any way by the proposed improvement.

The established law of this state, applied to the facts in this case, forbids the assessment of such upper lands. As these lands are not specially benefited they can not be assessed.

However, the trial court held, and my associate

judges, in their opinion, hold that there exist special circumstances in the case at bar which remove it from the application of the well established rule defining benefited lands and the law relating to the assessment of such lands to pay for a drainage improvement.

The theory is advanced that the high lands of Fulton county, which are assessed, will be specially benefited by the removal of silt deposited at the lower end of the improvement, which silt was in part drained into Bad creek from such assessed lands.

It is the reasoning of the majority opinion that the dominant tenement was, at some time in the distant past, a wilderness, and that as a result of the subsequent removal of trees and the normal cultivation of fields that the amount of silt drained therefrom into Bad creek was increased, and that this fact destroyed the natural servitude of the lower tenement to receive the water flowing from the higher tenement. It follows from this reasoning that in order to preserve its advantageous position the dominant tenement must forever remain in its natural state; trees must not be removed; fields must not be cultivated; and lands must not be developed or used in any way which would increase the amount of silt carried into a stream passing through the lower tenement. With this reasoning I do not agree.

There is in the record evidence that sewage is discharged into Bad creek by the village of Delta and by homes lying along the upper reaches of the stream and that this creates a nuisance and a health hazard. It is urged that the discharge of this sewage into Bad creek is not an incident of natural drainage and makes inapplicable the drainage laws as they apply to dominant and servient tenements.

If sewage and other objectionable matter is being discharged into this stream, which is polluting the stream and creating a health hazard, the injured par-

ties have adequate remedies to prevent the continuance of such a condition and to recover damages therefor where injury is shown. Certainly the drainage laws can not be resorted to to remedy such a condition, and property not requiring drainage assessed for the cost thereof under the guise that the lands assessed are specially benefited by the abatement of a health hazard.

The record in this case fails to show any benefit to the upper lands in Fulton county which will result from the proposed improvement or justify levying upon said lands any part of the cost thereof.

For the reasons here set out, I am of the opinion that the judgment of the Common Pleas Court should be reversed.