MERILLAT, Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF FULTON COUNTY, Appellee.

[Cite as *Merillat v. Fulton Cty. Bd. of Commrs.* (1991), 73 Ohio App.3d 459.]

Court of Appeals of Ohio,
Fulton County.

No. 90FU000005.

Decided May 3, 1991.

*Randy Merillat, pro se.*

*Donald E. Theis,* for appellee.

*Per Curiam.*

This case comes on appeal from a judgment of the Fulton County Court of Common Pleas which granted defendant-appellee's motion for summary judgment and dismissed, with prejudice, plaintiff-appellant's cause of action.

Appellant, Randy Merillat, filed a timely notice of appeal from that judgment. He asserts the following assignments of error:

"I. Appellant did file appeal timely.

"II. Appellant did file bond timely as directed by clerk of courts.

"III. The trial court did not recognize the cited case of Mason vs. Commissioners of Fulton County, 80 Ohio St. 151 (1909).

"IV. Appellant's constitutional rights was [*sic*] not upheld according to the due process of the law.

"V. Fulton County Commissioner Lowell Rupp was ineligible to participate in the ditch cleaning hearing and therefore the ruling made at the hearing should be null and void."

On December 29, 1988, appellee, the Board of County Commissioners of Fulton County ("board") passed Resolution 88–560, which affirmed a former

order approving a ditch restoration project known as Single County Ditch No. 2036, Tiffin River ("Single County Ditch 2036"). After hearing all evidence for or against the project and special assessments to be levied against the owners of the property who would allegedly benefit from the project, the board voted to proceed on the project.

On January 12, 1989, appellant, who is one of the landowners affected by the project, filed, *pro se*, a document captioned "Notice And Demand For Dismissal For Want Of Jurisdiction On Ditch Petition No. 2036." That filing apparently asserted a violation of appellant's constitutional rights and a lack of jurisdiction. No facts were stated in this document. Rather, it consisted of a list of legal conclusions and citations.

On January 20, 1989, appellant filed an amended complaint, which set forth the underlying facts of the case and alleged that R.C. Chapters 6131 through 6141 are unconstitutional in that they violate Section 16, Article I of the Constitution of Ohio. Appellant requested a declaratory judgment finding said statutes unconstitutional, a declaratory judgment finding that Single Ditch Project 2036 was null and void, and a finding that appellee's assessments under Single Ditch Project 2036 were null and void.

The board filed an answer which contended, among other things, that appellant's failure to comply with R.C. 6131.25 *et seq.* deprived the common pleas court of jurisdiction to consider appellant's cause of action. On June 5, 1989, the board filed a motion to dismiss or, in the alternative, a motion for summary judgment which asserted that R.C. Chapters 6131 through 6141 or their predecessor statutes are constitutional and that appellant's only recourse was, therefore, through the administrative appeal process outlined in R.C. 6131.25 *et seq.* The board reiterated that appellant had failed to comply with these statutes, thereby depriving the trial court of the jurisdiction needed to entertain his appeal.

Appellant, without obtaining leave of court, filed a second amended complaint on June 7, 1989. This "complaint" posed twenty-one questions and, in essence, was a response to the board's motion to dismiss and motion for summary judgment.

After a hearing was held on the motion for summary judgment, the trial court, on April 3, 1990, filed an extensive and well-reasoned opinion and judgment entry, in which it determined that R.C. Chapters 6131 through 6141 are constitutional and that appellant had failed to comply with R.C. 6131.25 and 6131.26. The court also answered all of the questions raised in appellant's second amended "complaint."

■ Appellant's third assignment of error addresses, in essence, the trial court's determination of the constitutional issues before it. After a thorough

review of appellant's arguments on these issues, the relevant statutes, and applicable case law, we conclude that the trial court did not err in its construction of *Mason v. Commrs. of Fulton Cty.* (1909), 80 Ohio St. 151, 88 N.E. 401, or in finding R.C. Chapters 6131 through 6141 constitutionally sound. We hereby affirm and adopt the trial court's judgment on this issue as our own. See Appendix A. Appellant's third assignment of error is found not well taken.

 ■  In his first and second assignments of error, appellant asserts that the trial court erred in finding that he had not complied with the mandates of R.C. 6131.25 and 6131.26 and had thereby failed to perfect his appeal of the board's order.

R.C. 6131.25 provides that an affected property owner may appeal an order of the board within twenty-one days of the date the order was issued. Only enumerated questions, *e.g.*, the necessity of the improvement, may be raised in that appeal. R.C. 6131.26 sets forth specific mandatory steps which must be taken in order to perfect the appeal. These include (1) the filing of an appeal bond with the clerk of the court of common pleas in an amount *not less than $500* plus the sum of two dollars for each parcel of land in excess of two hundred parcels averred in the petition to be benefited; (2) the bond must be filed within twenty-one days of the date of the order appealed from; and (3) the bond must be accompanied by a statement of the decision or order appealed from and of the claims of the owner in ordinary and concise language.

The board's order was issued on December 29, 1988. Appellant filed his first "notice" on January 12, 1989. This notice did not contain a statement of the decision or order appealed from and did not state any claims which would be cognizable under R.C. 6131.25. Further, although appellant maintains that he filed a $101 appeal bond, there is no indication in the record of this case that said bond was *ever* filed. Appellant's amended complaint, file-stamped January 20, 1989, was filed outside the jurisdictional twenty-one day period and, again, lacks any proof that an appeal bond was filed. Therefore, appellant failed to comply with the strictures of R.C. 6131.25 and 6131.26. The trial court did not err in finding that appellant's claim was not timely filed and dismissing it as a matter of law. Accordingly, appellant's first and second assignments of error are found not well taken.

Appellant, in his fourth assignment of error, asserts that the Fulton County Court of Common Pleas deprived him of his constitutional right to a jury trial. The trial court granted appellee's motion for summary judgment. In doing so, the court found that no genuine issue of any material fact remained to be litigated and that, even in viewing the evidence in a light most favorable to

appellant, appellee was entitled to judgment as a matter of law. Because we agree with the trial court's reasoning and affirm and adopt its judgment, appellant's fourth assignment of error is rendered moot. That is, no factual issue remains in this case and, therefore, no questions exist for resolution by a jury. Appellant's fourth assignment of error is found not well taken.

In his fifth assignment of error, appellant maintains that one of the members of the board, Lowell Rupp, who participated in the hearing on Resolution 88–560, owned land that would benefit from Single Ditch Project 2036. Appellant concludes that, pursuant to R.C. 6131.60,[1] the order of the board is null and void. Appellant raises this issue for the first time in his appeal to this court. We need not address errors which are assigned and briefed but which were not raised in the trial court. *State, ex rel. Specht, v. Bd. of Edn.* (1981), 66 Ohio St.2d 178, 20 O.O.3d 191, 420 N.E.2d 1004. Moreover, while Rupp is listed as a member of the board, there is no evidence in the record of this case tending to show that he owned or owns property which would be benefited by Single Ditch Project 2036. An appellate court can reach its decision only upon facts which are adduced in the trial court proceeding and cannot base that decision on allegations founded upon facts from outside the record. App.R. 9(A); *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500. Accordingly, appellant's fifth and final assignment of error is found not well taken.

On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Fulton County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

HANDWORK, P.J., MELVIN L. RESNICK and SHERCK, JJ., concur.

---

1. R.C. 6131.60 provides:

"If one or more members of a board of county commissioners are petitioners for an improvement or own land that will be taken, benefited, or damaged by the improvement petitioned for, the clerk of the board of county commissioners shall notify the judge of the court of common pleas of the county who shall within ten days appoint as many disinterested freeholders of the county as are necessary to take the place of the interested members. The appointees shall not be related by blood or affinity to the interested members. They shall before acting be sworn to perform faithfully and impartially the duties of the members in the matter of the improvement, which oath shall be signed by them and by the officer before whom the same is taken and filed with the clerk. Upon appointment and qualification the appointee shall, in the proceedings upon the improvement, perform all the duties of the disqualified members and shall receive from the general drainage improvement fun the same per diem rate as the disqualified member receives, as shown by the record for such services, and the amount so paid shall be costs taxed in the proceedings."

APPENDIX A

JAMES E. BARBER, Judge.

Plaintiff filed his action and his amended complaint against the Fulton County Board of Commissioners, requesting that this court issue a declaratory judgment declaring R.C. Chapters 6131 through 6141 unconstitutional as violative of Section 16, Article I of the Ohio Constitution, and also declaring Ditch Maintenance Project 2036 null and void for the reason the costs exceed the benefits to plaintiff and other similarly situated citizens of Fulton County in the water shed area.

Defendant filed its motions to dismiss and for summary judgment, and memorandum in support with supporting affidavits on June 5, 1989. Plaintiff subsequently filed his amended complaint on June 7, 1989, alleging the additional federal constitutional issues of jurisdiction and due process of law, and further the absence of contract. Defendant filed its answer of general denial and affirmative defenses, along with motion for attorney fees and memorandum on June 26, 1989. A reply memorandum was filed on July 11, 1989. Hearing on all motions was held August 22, 1989, whereupon plaintiff represented to the court there were two companion cases in federal court, one captioned *Gahlon W. Kunkle v. Fulton County Board of Commissioners*, Case No. 3: 89CV7102, and the second captioned *William P. Hickey v. Sandusky County Commissioners*, Case No. 3: 89CV7251, wherein substantially similar constitutional issues were being tried, that federal law and determination was preemptive, and that this case should be held in abeyance pending decision of the two federal cases. The court concurred, and the case was placed on inactive status, pending resolution of the federal lawsuits.

On March 1, 1990 this court received notice that the two federal cases had been dismissed due to lack of jurisdiction, the judge stating explicitly in his opinion: "[A] plaintiff cannot finesse or forward fumble his way into federal court [citations omitted]."

Defendant's motions to dismiss, for summary judgment, and for attorney fees were set for hearing on March 15, 1990. Plaintiff filed a supplemental notice and demand for dismissal for want of jurisdiction on Ditch No. 2036 on March 15, 1990. Plaintiff appeared *pro se* and defendant appeared by its counsel Donald E. Theis, whereupon arguments of counsel and of plaintiff were heard.

It is well established a motion for summary judgment will be granted when it is determined that: (a) no genuine issue as to any material fact remains to be litigated; (b) the party moving for summary judgment is entitled to judgment as a matter of law; (c) that it appears from the evidence that reasonable minds can come to but one conclusion which is adverse to the party

against whom the motion is made; and (d) the adverse party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Houk v. Ross* (1973), 34 Ohio St.2d 77, 63 O.O.2d 119, 296 N.E.2d 266.

Plaintiff asserts a number of claims in the present case, which, although they are intermixed and overlapping, may be summarized as follows:

(1) It is illegal to require Fulton County citizens to assume and pay a Michigan liability and a Williams County, Ohio liability;

(2) This court does not have jurisdiction to require plaintiff to assist in the payment of improvements to be made to Ditch No. 2036 (Tiffin River);

(3) The commissioners' actions are in violation of plaintiff's constitutional right of due process of law;

(4) The commissioners' actions are in violation of plaintiff's contractual rights;

(5) The commissioners' regulatory actions exceed their constituted police powers; and

(6) R.C. Chapters 6131 through 6141 are unconstitutionally overbroad, confiscatory, and lacking in sufficient guidelines and protective measures as to pass constitutional scrutiny.

Although it is not clearly expressed or demanded, apparently plaintiff wants, in addition to declaratory action, injunctive relief.

Defendant, in additional to its general denial, asserts the following special defenses:

(1) Plaintiff failed to file a timely appeal;

(2) Plaintiff failed to timely perfect an appeal;

(3) Plaintiff failed to comply with the requirements of R.C. 6131.25 and 6131.26, which delineate and limit the scope of inquiry and require the posting of an appeal bond; and

(4) Plaintiff failed to join necessary parties.

The gist of plaintiff's complaint is a constitutional one. Plaintiff is basically asserting Ohio's passage of R.C. Chapters 6131 through 6141 is an unconstitutional encroachment upon his civil rights and upon his right to own and maintain property. Plaintiff asserts these rights were set forth, expounded upon, and preserved in the Ohio Supreme Court case of *Mason v. Commrs. of Fulton Cty.* (1909), 80 Ohio St. 151, 88 N.E. 401. *Mason* held that:

"A landowner may, in the reasonable use of his land, drain the surface water from it into its natural outlet, a watercourse, upon his own land, and thus increase the volume and accelerate the flow of water without incurring liability for damages to owners of lower lands; and his land is not subject to

assessment for the cost of a ditch, or an improvement, that will not benefit its drainage but is constructed to prevent overflow from the watercourse or to benefit the drainage of servient lands." *Id.*, syllabus.

A cursory reading of the holding in the *Mason* case would seem to support plaintiff's contention that he should not be required to participate and share in the overall burden and costs of a watershed improvement if the runoff or flooding of his particular parcel of real estate is not directly enhanced. The court has not been able to find any case expressly overruling the holding in *Mason,* but it was clearly distinguished in the case of *In re Joint Cty. Ditch No. 1108-2* (1952), 94 Ohio App. 169, 51 O.O. 357, 114 N.E.2d 743.

Defendant asserts the purpose of the proposed project No. 2036 is to restore the channel of the Tiffin River and to provide an outlet for the accelerated runoff from artificial drainage that has developed. (See Affidavit of Rodney Creager, Drainage Engineer of Fulton County.) Defendant further asserts upland improvements (which the court notes and defendant does not deny, includes improvements in Michigan and Williams County) have significantly changed circumstances since 1909 and have more than doubled the rate of runoff from upland watershed areas. Defendant lastly points out that G.C. 6442 through 6508, upon which R.C. Chapters 6131 through 6141 are patterned and based, were declared and enacted pursuant to an emergency Act in 1923. Defendant argues that, procedurally, *Mason* complied with the statutory requirements existing in 1909. Quite clearly the statutory requirements, codified in R.C. Chapters 6131 *et seq.,* have since changed. So have the societal and economic realities of farming, drainage, and flood control. *Mason* did not involve any challenge to the validity of the relevant state statutes under Ohio's Constitution. Rather, the challenge was one of assessments being levied to benefits, a matter which is encompassed today in R.C. 6131.25(E). In contrast to *Mason,* plaintiff has here failed to comply with R.C. 6131.25 and 6131.26, regarding the timely filing of his appeal and the posting of an appeal bond to be able to maintain this action.

Defendant further argues *Mason* has no application on a substantive basis. The statutory changes which occurred subsequent to the *Mason* decision have restricted *Mason's* holding to the time period and statutory scheme then in effect. Defendant argues *Mason's* current limited status is best illustrated in the appellate court case of *In re Joint Cty. Ditch No. 1108-2, supra.*

*In re Joint Cty. Ditch* involved an appeal from a judgment of the Henry County Common Pleas Court dismissing a petition for the deepening, widening and straightening of a part of Bad Creek and two lateral open ditches located in Fulton and Henry Counties. The trial court had found in favor of appellees on all issues encompassed in G.C. 6467 (now R.C. 6131.25[A] through [E] ) and

ordered the planned improvement to proceed. (94 Ohio App. at 174–175, 51 O.O. at 359, 114 N.E.2d at 747–748.)

In response to the challenges made to the trial court's findings anent the provisions of G.C. 6467 (now R.C. 6131.25), particularly the requirement that assessments be levied according to benefits, the appellate court noted that *Mason, supra,* was predicated on an earlier case and statutory scheme which expressly codified a legislative intent which did not authorize assessments on superincumbent lands passing water onto others through natural water courses. 94 Ohio App. at 179–180, 51 O.O. at 361, 114 N.E.2d at 749–750. The appellate court noted that the current statute (relating to assessments for ditch improvements, G.C. 6455, now R.C. 6131.15) contained no such restrictive assessment language. This holding severely limited the relevance of the *Mason* case. *Id.*

Based upon the merits of the case before it, the appellate court concluded that:

"The evidence in the instant case shows that the uplands assessed for this ditch improvement are cleared of their timber and are under cultivation in such a manner that large quantities of silt are drained from them into the natural watercourse and that such silt is carried down stream toward the mouth thereof and deposited along the lower part thereof so as to interrupt the free and natural flow of water in said natural watercourse and at times, to cause the lands adjacent to and in the vicinity of the lower part thereof to become flooded to such an extent as to interfere with or prevent the growing of crops thereon. The evidence shows further that the sewage from many toilets located on the higher lands along the natural watercourse is drained into the watercourse and thereby carried and deposited on and along the lower part of said stream, constituting a nuisance therein and thereon." *Id.* at 180, 51 O.O. at 361–362, 114 N.E.2d at 750.

The appellate court determined that the facts before it differed from those in *Mason* in that the instant case involved the drainage of silt and sewage from lands having the status of dominant tenements, such lands not being in their natural state because of cultivation and sewage. *Id.* at 180–181, 51 O.O. at 362, 114 N.E.2d at 750. The appellate court held that the dominant tenement lands would be specially benefited by the improvement of the removal of silt and sewage from the natural watercourse and by restoring the stream to its natural condition. *Id.* at 181, 51 O.O. at 362, 114 N.E.2d at 750. The appellate court also affirmed the trial court's other findings made under G.C. 6467 (R.C. 6131.25).

A review of the present scheme embodied in R.C. Chapter 6131 likewise establishes *Mason* has no relevance or application in the case at hand. R.C.

6131.15, which concerns assessments according to benefits, requires the county engineer to assess everyone in the proportion each is benefited by the improvement, as "benefit" and "improvement" are defined in R.C. 6131.01 (6131.15 last paragraph). R.C. 6131.01(C)(4) broadly defines "improvement" as a term including:

"(4) The removal of obstructions such as silt bars, log jams, debris, and drift from any ditch, drain, watercourse, floodway, river, creek or run[.]"

R.C. 6131.01(F) likewise broadly defines "benefit" or "benefits." The state legislature, moreover, expressly embodied and codified the holding in *In re Joint Cty. Ditch No. 1108-2, supra,* as part of what comes within the meaning of "benefit." The last paragraph of R.C. 6131.01(F) specifically states:

"Providing an outlet for the accelerated runoff from artificial drainage whenever the stream watercourse, channel, or ditch under improvement is called upon to discharge functions for which it was not designed by nature; it being the legislative intent that uplands that have been removed from their natural state by deforestation, cultivation, artificial drainage, urban development, or other manmade causes shall be considered as benefited by an improvement required to dispose of the accelerated flow of water from the uplands."

Although the holding in *Mason* has not been explicitly overruled, it is clear, to the extent it conflicts with the provisions of R.C. Chapters 6131 *et seq.,* it has been implicitly overruled, and the court hereby so rules.

Plaintiff has addressed twenty-one specific claims in his amended complaint filed June 7, 1989. The court will address each claim by number:

1. "[Is the commissioners' action] a violation of the 4th Amendment?"

The court hereby rules it is not. "Seizures" are authorized under the Fourth Amendment if they are reasonable and enacted pursuant to due process of law.

2. "[Is the commissioners' action] a violation of the 5th Amendment?"

No. No self-incrimination nor criminal action is involved in this case. No "taking of private property for public use without just compensation" has occurred. The statute has adequately provided for various procedural avenues whereby plaintiff may present and process claims for any "taking" or "damages" which may occur in the project.

3. "[Is the commissioners' action] a violation of the 8th Amendment?"

No. There are no issues of bail, fine, or punishment involved in this case.

4. "[Is the commissioners' action] a violation of the 14th Amendment?"

No. The commissioners have been acting pursuant to due process of law and have afforded equal protection of the laws.

5. "[W]ho has the final decision on constitutional rights issue(s)?"

The judiciary, who are elected or appointed by the people.

6. "[Can] local law and codes supercede jurisdiction?"

No. However, jurisdiction in this case is and has at all times been proper.

7. "Could * * * a crime [be] committed when an oath-taken officer deprives a common law person of his life, liberty and property * * *, [w]ithout the due process of the law?"

Yes, but that is not an issue in this case.

8. "Could a common pleas court have jurisdiction on a constitutional issue?"

Yes. See Judge Potter's decision in the two related federal cases which were dismissed.

9. "Does the court have a written contract * * * to proceed with this project?"

It doesn't need one. Its "contract" is with the people as they have expressed themselves at the ballot box and in the legislature.

10. "Is this a threat, duress, coercion plan to deprive a common law sovereign citizen of his constitutional right?"

There is no evidence this has occurred in this case.

11. "[W]ill the county have jurisdiction to collect project cost * * *?"

Yes, by statute, which was passed and draws its vitality from the actions of the elected representatives of the state of Ohio.

12. "Could this be tyranny government * * *?"

No. Due process of law has been followed in this case.

13. "Do you think it is justice * * *?"

Yes, justice is the application of law, which is founded on the will of the people and expressed by statute, to produce a just result. The economic impact of the greater good may unfortunately fall more heavily upon certain persons, but that does not diminish the greater good or its overall beneficial impact upon these individuals or society as a whole.

14. "Why would a commissioner * * * go on and commit this act?"

He is charged by law with the responsibility of protecting and enhancing the property rights of all the citizens of a watershed, and acting pursuant to law.

15. "Does the county have jurisdiction to overrule the *Mason v. The Fulton County Commissioners of 1909* and make Ohio citizens pay Michigan liability?"

Yes, as ruled earlier, both the law and the societal problems of drainage have changed since *Mason* was decided, and the commissioners are acting pursuant to current law and in response to current problems.

16. " * * * [W]hat is the motive of the commissioners * * *?"

It is to enhance and protect the property rights of all Fulton County citizens who live in the watershed area, and to fairly allocate the burden.

17. "Why [is this hearing being held] when * * * this is filed in federal court?"

The federal court has declined jurisdiction in favor of the state court.

18. "[Is] this a petition to the court * * *?"

Yes.

19. "How can I answer local laws and code when there is a federal constitutional issue here?"

You file a lawsuit, as you have done, acting in conformity with and recognizing due process as codified in our Rules of Civil Procedure.

20. "Has there been a hearing on any [of the allegations] of the complaint?"

Yes, and the parties have been duly notified of all hearings.

21. "[Can I] answer any local laws or code [before] the constitutional right violation issue has been answered?"

No. That is why this court waited until the federal court dismissed the constitutional issues and deferred to the state court.

Notwithstanding the substantive issues of plaintiff's complaint, which have been resolved in defendant's favor, it is abundantly clear plaintiff failed to timely file his appeal, as required by the provisions of R.C. 6131.25, or post an appeal bond as required by R.C. 6131.26. As noted above, R.C. Chapter 6131 has been found to be constitutional. Accordingly, it appears plaintiff's complaint is defective as a matter of law, and ought to be dismissed.

In consideration of the constitutional determinations made, the applicable cases and statutes cited, the arguments of counsel and of the plaintiff made, orally and in writing, and law and equity, it appears defendant's motion for summary judgment is in the interest of justice and ought to be sustained, and plaintiff's complaint ought to be dismissed with prejudice.

*It is so ordered.*

It further appears defendant's motion for attorney fees is not in the interest of justice and ought to be denied.

*It is so ordered.*

The court's ruling herein appears to be a full and complete adjudication of all justiciable issues in the within case, and there appears to be no good reason to defer final judgment hereof. Accordingly, final judgment is hereby rendered in favor of defendant, plaintiff's action is hereby dismissed, and this ruling shall be considered a final appealable order for purposes of prosecuting an appeal.

*It is so ordered.*