OPINION
Pursuant to Crim.R. 12(J), the State is appealing the decision of the trial court to partially sustain Linda D. Keith's motion to suppress evidence found in her purse during a drug raid. The pertinent facts and the rationale of the trial court are fully set forth in its opinion and decision as follows:
This matter came on for hearing on February 4, 2000, on the motion to suppress filed by Defendant on November 15, 1999. At the conclusion of the hearing defense counsel wished to offer a post-hearing memorandum and was granted until March 3, 2000, to file the same. The State was invited to respond if it wished on or before March 17, 2000. No memorandums have been received to date, and this matter is ripe for decision.
 I. FACTS
On September 29, 1999, at approximately 10:30 p.m., the Dayton Police Department Strike Force executed a search warrant at 323 College, Dayton, Ohio. A search warrant had been previously signed that day by Judge Cannon of the Dayton Municipal Court. An examination of the search warrant and affidavit (State's Exhibit 4) indicates that its issuance was predicated upon two previous drug buys by a confidential informant at that address on September 22 and September 24, 1999. The buys were from two different black males who are more fully described in the search warrant. There had been a fresh pre-search buy prior to the execution of the warrant, and the information received by the entry team was that the seller in that situation was a heavy-set black female who had sold the confidential informant crack cocaine.
The Court finds that the police announced by a bull horn that they were at the door. Someone attempted to close the main door, and the officers responded by breaking through a screen door to gain entrance. Officer Steve Bergman was assigned the front room and testified that as he entered the defendant was on a couch in that room. He ordered her to lie face-down on the floor and handcuffed her but noticed that she was digging in her bra as she was going to the floor. He stayed in the room with her. Seven or eight other officers flowed through that room in order to cover their preassigned locations. Once Bergman was aware that the house was secured (which was about two minutes), he asked the defendant for identification while she was still lying face-down on the floor. She indicated she did not have it on her but that it was in her purse. The officer walked over to her purse on a table and said, "Is this it?" to which the defendant indicated, "Yes." Bergman unzipped the purse at the top and stated he could see in the purse a baggie that appeared to contain crack cocaine. He had the purse photographed (State's Exhibit 1), then removed the baggie from the purse. He then went back to the purse to search for her I.D., unzipped another side compartment and found another baggie with crack cocaine in it. This compartment was photographed as well (State's Exhibit 1). Bergman testified that he understood and implied from defendant's response that defendant wanted him to look into her purse for her I.D. He further indicated he would never let the defendant retrieve an I.D. from a purse because it may contain weapons.
There was further discovered under the couch upon which the defendant was sitting a loaded nine millimeter Glock pistol with a laser sight.
Detective Saunders, a female officer, was called to search the defendant's bra and found $135 in cash in her bra.
The defense presented as a witness one Gregory Goodwin, who was defendant's boyfriend at the time and was present in the same room. Goodwin had also been ordered face-down on the floor and couldn't observe what was going on but could hear, however. Goodwin claims he never heard the defendant consent to the officer looking into her purse nor the defendant direct any officer to go to her purse for identification. Goodwin, a convicted felon who has been to prison twice, later vacillated in his testimony and indicated he cannot really remember for sure what was said about the identification. The Court elects to believe Officer Bergman's version of the testimony.
 II. LAW AND ANALYSIS
Defendant contends that the search warrant in this matter issued by Judge Cannon on September 29, 1999, was wrongful and illegal and resulted in a violation of defendant's Fourth Amendment constitutional rights. Defendant attached no memo to the motion, nor has defendant's attorney seen fit to file a post-hearing brief setting forth with any specificity the reasons why the same was illegal. The Court has examined the search warrant (State's Exhibit 4) and finds that it complies with the provisions of Section 2933.23 of the Ohio Revised Code and Criminal Rule 41(C). Furthermore, the Court finds that from the facts set forth in the affidavit which was submitted in support of the search warrant that Judge Cannon had reasonable and probable cause based upon that affidavit to issue the search warrant in question.
The Court now moves to the issue of the question of whether the search of the defendant's purse was with her consent, voluntarily given. At best the defendant's consent to open her purse was an implied one. Giving all of the credibility to Officer Bergman in the matter in which the verbal exchange occurred between him and the defendant, it still cannot be said that the defendant expressly granted the officer permission to open her closed purse. Assuming for the moment, however, that that consent was expressly given, the Court finds that that consent was not voluntarily given under the totality of the circumstances.
The State must show by a preponderance of the evidence that the consent was freely and voluntarily given. United States v. Matlock (1974),415 U.S. 164, 177-78; State v. Trent, 1999 WL 1243352 (Ohio App. 2 Dist.), unreported. The question to be determined by the Court was whether the defendant voluntarily consented to search her purse or whether her consent (if any) was an acquiescence to authority. "The question whether [a defendant's] consent . . . was in fact voluntary or was the product of duress or coercion, express or implied, is to be determined by the totality of all the circumstances, and is a matter which the government has the burden of proving." State v. Bailey 1989 WL 74861 (Ohio App. 4 Dist.), unreported (citing Schneckloth v. Bustamonte (1973), 412 U.S. 218; Bumper v. North Carolina (1968), 391 U.S. 543).
The Bailey court, quoting U.S. v. Phillips (1981), 664 F.2d 971, set forth some criteria for the determination of voluntariness:
 Among the factors considered in evaluating whether defendant's consent was in fact voluntary — none of which is a controlling factor — are voluntariness on the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.
Superimposing the facts in this case over the criteria of the Phillips and Bailey cases, the Court concludes that the defendant's consent to search her purse was not voluntarily given. Concerning the voluntariness of the defendant's custodial status, the defendant, while not arrest [sic], was under the complete control of the police as she was lying face-down on the floor and was handcuffed. While a surprising show of force is a necessary tactic for the police to gain immediate and complete control of a search warrant situation, it is also a coercive police procedure. Picturing a scene of a bull horn announcing entry, followed immediately by a screen door being broken down and pieces of it flying through the air, followed by seven to nine officers racing into the room (presumably with weapons drawn) is about as coercive a police procedure as one can imagine. Considering the extent and level of the defendant's cooperation with the police, there is no evidence that the defendant in any way was cooperating with the police. She was acquiescing to the police's demands to lay on the floor and allow herself to be handcuffed, but at the time of her response to Officer Bergman's request about an identification, it certainly can't be said she was cooperating. There was no evidence presented of the defendant's awareness of her right to refuse to consent to the search or to her education and intelligence level. As to the defendant's belief that no incriminating evidence would be found, this Court looks to the same logic as considered in the Bailey court. The Bailey court found a most significant fact that tended to establish that consent was involuntary was that defendant in that case, as in this, must have known that by consenting to the search of her purse that discovery of the drugs was inevitable and would result in her arrest. Based upon the totality of the circumstances, assuming defendant had even given consent, this Court finds that it was not voluntarily given. Since the defendant was not one of those individuals designated in the search warrant to be searched, this was a warrantless search. Defendant's consent was necessary and was not voluntarily obtained. Accordingly, the actions of the officer were in violation of the Fourth Amendment, and any evidence which flows therefrom will be suppressed.
 III. CONCLUSION
For the reasons set forth above, the Court finds that there was probable cause demonstrated for Judge Cannon to issue the search warrant and that the same was issued in compliance with the statutes and the Criminal Rules, and the motion pertaining to the issuance of the search warrant is overruled.
For the reasons set forth above, the motion to suppress the evidence obtained from the defendant's purse is well taken, and the same will be sustained.
This matter is set for scheduling conference on October 31, 2000, at 1:30 p.m.
SO ORDERED.
On appeal, the State does not contest the finding of the trial court that Keith's consent was involuntary. Rather, the State's total argument, both in its brief and on oral argument, is that the trial court erred because the search warrant encompasses everything on the premises described in the warrant and, consequently, the officers have the right to open every closed container found on the premises, including the purse of a lady found on a table near where she had been sitting. The argument is interesting and probably some day we will have to face it, but not in this case.
It is quite apparent from a reading of the transcript of the hearing that the focus of both parties and the court was on whether defendant Keith's consent to examination of her purse by the officer was voluntary or not. See, e.g., Tr. 63-64. Nowhere during the hearing, or in any brief or memorandum filed by either party to the trial court, was there any mention of the argument that consent was not necessary because it was a closed container on the premises of a site on which a warrant had issued for a drug raid. It is settled law that issues raised for the first time on appeal and not having been raised in the trial court are not properly before this court and will not be addressed when the argument is raised for the purpose of reversing the decision of the trial court. State v. Schneider (Dec. 13, 1995), Greene App. No. 95 CA 18, unreported, citing State v. Coleman (1988), 37 Ohio St.3d 286, 294; Merillat v. Fulton Cty. Bd. of Commrs. (1991), 73 Ohio App.3d 459, 463. See also Searcy v. Super Eight Motel (Mar. 2, 1994), Montgomery App. No. 14065, unreported.
The only assignment of error, that the trial court erred when it suppressed the drugs seized from the purse of the defendant, is overruled, and the judgment is affirmed.
BROGAN, J. and GRADY, J., concur.